IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| VARTA MICROBATTERY GMBH, § <br> § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> AUDIO PARTNERSHIP LLC and AUDIO § <br> PARTNERSHIP PLC d/b/a CAMBRIDGE § <br> AUDIO, § <br> § <br> *Defendants*. § | CIVIL ACTION NO. 2:21-CV-00400-JRG-RSP <br> (LEAD CASE) |

## **MEMORANDUM ORDER**

Before the Court is Defendant EVE Energy Co., Ltd.'s Motion for Supplemental Claim Construction (**Dkt. No. 179**),[1] to which Plaintiff VARTA Microbattery GmbH has filed a Response (Dkt. No. 191). The Court **DENIES** the motion for the reasons below.

**I.    BACKGROUND**

On October 25, 2021, VARTA filed suit against Defendants Audio Partnership LLC and Audio Partnership PLC d/b/a Cambridge Audio (together, "Audio Partnership") and EVE Energy Co., Ltd. alleging that infringement of United States Patent Nos. 9,153,835 (the "'835 Patent"); 9,496,581 (the "'581 Patent"); 9,799,913 (the "'913 Patent"); 11,024,869 (the "'869 Patent"); 11,024,904 (the "'904 Patent"); and 11,024,905 (the "'905 Patent"). 2:21-CV-00400, Dkt. No. 1 (Audio Partnership Complaint); 2:21-CV-00399, Dkt. No. 1 (EVE Complaint). Audio Partnership is no longer in the case. *See* Order, Dkt. No. 45 (dismissing Audio Partnership). The '835 Patent has also been dropped from the case. *See* Joint Pretrial Order, Dkt. No. 187 at 4. Now, VARTA alleges that EVE infringes the '581 Patent, the '913 Patent, the '869 Patent, the

---

[1] Unless otherwise stated, references to docket and page number correspond to those assigned through ECF.

'904 Patent, and the '905 Patent (collectively, the "Asserted Patents"). *Id.* Specifically, VARTA alleges that EVE infringes the following claims:

> '581 Patent: Claims 14-15, 17-23 and 25
> '913 Patent: Claims 9-16
> '869 Patent: Claims 1-20 and 22-29
> '904 Patent: Claims 1-8, 10-14, 16-17, 19 and 21-24
> '905 Patent: Claims 1-11, 13-15 and 17-18

(collectively, the "Asserted Claims"). *Id.*

Claims 14 and 23 of the '581 Patent, and claims 9, 12, and 14 of the '913 Patent include the limitation "the housing cup and the housing top are held together by a force-fitting connection" (the "Disputed Limitation").[2] Claim 14 of the '581 Patent, which is exemplary for purposes of this motion, has been reproduced below for reference (Disputed Limitation in bold and italics):

> 14.  A button cell comprising:
> a housing cup including a flat bottom area and a cup casing extending along an axial direction and a housing top including a flat top area and a top casing extending along the axial direction, the housing cup and the housing top separated from one another by an electrically insulating seal and which form a button cell housing with the flat top area parallel to it the flat bottom area, and
> a rechargeable lithium-ion electrode-separator assembly disposed within the button cell housing comprising at least one positive electrode and at least one negative electrode in the form of flat layers and connected to one another by at least one flat separator,
> wherein the electrode layers are aligned essentially at right angles to the flat bottom area and the flat top area, wherein the rechargeable lithium-ion electrode-separator assembly is a spiral winding having end faces defining side surfaces of the spiral winding facing in the axial direction relative to the flat bottom area and the flat top area,
> a first of the electrodes connects to a first of the flat bottom area or the flat top area via a metal foil output conductor comprising a flat portion extending in a radial direction perpendicular to the axial direction and resting flat between an a first end face of the spiral winding and the first of the flat

---

[2] The motion also notes that claims 14 and 23 of the '835 Patent include this limitation, but that patent is no longer asserted. Motion, Dkt. No. 179 at 2. Consequently, the Court need not address the '835 Patent.

>   bottom area or the flat top area to which the flat portion is connected via a weld,
>
> wherein the cup casing partially overlaps the top casing in an overlapping area, the top casing is disposed radially inward of the cup casing in the overlapping area, and ***the housing cup and the housing top are held together by a force-fitting connection***, and
>
> wherein the cup casing includes a first part proximal to the flat bottom area and a second part disposed in the overlapping area, the first part of the cup casing being disposed radially inward with respect to the second part.

'581 Patent, 191-2 at 15 (IPR Certificate at 1:7–46).

EVE filed petitions for *inter partes* review (IPR) challenging the asserted claims of the '581 Patent and the '913 Patent. Response, Dkt. No. 191 at 6. VARTA filed responses to the petitions, in which it argued for denial of institution because, among other reasons, "[i]n contrast [to the prior art references], the challenged claims require a force-fitting connection to hold the housing cup and top together." *See* VARTA's Response to the '581 Petition, Dkt. No. 191-7 at 2–4.

EVE contends that VARTA's responses to the IPR petitions include "unequivocal and unambiguous statements" that affect the scope of the Disputed Limitation, and those statements were (1) "made before the Patent Trial and Appeal Board (PTAB)" and (2) "adopted by the PTAB in denying institution of certain requests for IPRs." Motion, Dkt. No. 179; *see also* Decision Denying Institution of IPR for '581 Patent, Dkt. No. 191-11 at 2. According to EVE, since VARTA disavowed scope as to the Disputed Limitation, the Court should construe the Disputed Limitation to mean "the housing cup and housing top are held together *exclusively* by a force-fitting connection *and excluding any other mechanism such as a spring-loaded arrangement, adhesives, or crimping that closes or holds together the button cells*." Motion, Dkt. No. 179 at 6 (emphasis added).

3

The threshold issue is whether VARTA's remarks during the PTAB proceedings disclaimed scope of the Disputed Limitation. Since that is the sole basis for EVE's request for supplemental construction, a finding of no disclaimer would eliminate the need for additional construction.

## II.   LAW

A claim term is generally given the ordinary and customary meaning "that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (*en banc*) (citations omitted). In fact, "[t]here is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc. v. Amino Chems. Ltd.,* 715 F.3d 1363, 1373 (Fed. Cir. 2013) (citing *Phillips,* 415 F.3d at 1312–13). When construing claim terms, the primary resource courts consider is intrinsic evidence, such as the specification and the prosecution history. *Id.* at 1316–17. Courts may also rely on extrinsic evidence such as expert and inventor testimony, dictionaries, and treatises. *Id.* at 1317.

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Sols.*, 750 F.3d at 1309.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or during prosecution must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."); *see also Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013) ("Thus, when the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

The Federal Circuit has extended the concept of disclaimer to statements made before or during the institution of an IPR proceeding. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("we hold that statements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer.").

### III. ANALYSIS

Did VARTA disclaim the scope of the Disputed Limitation in its responses to EVE's IPR petitions? It did not.

In response to EVE's IPR petition on the '581 Patent, VARTA stated:

> The '581 patent draws a distinction between prior art button cells that are closed by beading over and the inventive button cells closed by a force-fitting connection. Kobayashi and Brown, even when modified as suggested by Petitioner, are closed by beading over. In contrast, the challenged claims require a

5

> force-fitting connection to hold the housing cup and top together. Petitioner's, and its expert's, conclusory argument that Kobayashi and Brown meet the force-fitting requirement by inherency fails because it is directly at odds with the '581 patent specification, the prior art upon which Petitioner relies, and prior findings by the Board.

Patent Owner's Preliminary Response, Dkt. No. 191-7 at 7.

First, EVE argues that this language "clearly and unequivocally" states that the Disputed Limitation "precludes *any other mechanism* (such as a spring-loaded arrangement, adhesives, or beading over) that closes or holds together the button cell housing." Motion, Dkt. No. 179 at 4. EVE is incorrect. VARTA's statement does not rule out the possibility of any other mechanism *in addition to* the force-fitting connection recited in the claims.

Second, EVE isolates partial sentences from VARTA's response that purport to show VARTA "clearly and unambiguously" disavowed claim scope. *Compare* Motion, Dkt. No. 179 at 4 ("VARTA repeatedly cited to patent specification language that the cup and the top are held together 'in the axial direction *exclusively* by a force-fitting connection, and which do not have a beaded-over cup edge ….'") *with* Patent Owner's Preliminary Response, Dkt. No. 191-7 at 10 ("The '581 patent describes that 'it is also possible to manufacture button cells in which the cell cup and the cell top are held together in the axial direction exclusively by a force-fitting connection, and which do not have a beaded-over cup edge.'"). The Court is not persuaded. The full statements contain language such as "possible," "example," and "preferred," which fails to unequivocally and unambiguously state that the Disputed Limitation "precludes any other mechanism that closes or holds button cells."

Third, EVE argues that VARTA's disavowal at least partially formed the basis for the Board's decision to deny institution of IPRs. Motion, Dkt. No. 179 at 5–6; Decision Denying Institution of the '581 Patent, Dkt. No. 191-11 at 11–12 ("Although we need not decide the

6

precise meaning of 'held together by a force-fitting connection' in order to decide whether to institute trial, we note" that (1) "without some evidence to the contrary, a battery casing whose half parts are 'held together by' a particular condition must be a battery casing whose half-parts would no longer be held together if the condition were not present," and (2) "that neither party has directed us to any evidence to the contrary."), *id.* at 12 ("Accordingly, whatever a 'force-fitting connection' is, a battery made in accordance with the teachings of the prior art is not a battery that is 'held together by a force-fitting connection' unless that battery would cease to be held together in the absence of the 'force-fitting connection.'"). Notably, the PTAB was "able to determine whether to institute trial without expressly construing any claims." Decision Denying Institution of the '581 Patent, Dkt. No. 191-11 at 10.

In sum, EVE has failed to demonstrate—and VARTA's remarks simply do not—disclaim scope from the Disputed Limitation in the manner EVE argues. Accordingly, the limitation "the housing cup and the housing top are held together by a force-fitting connection" (Disputed Limitation) still has its plain and ordinary meaning, which does not exclude the possibility of an additional mechanism that facilitates closing or holding together the button cells.

## IV. CONCLUSION

For the reasons above, the Court **DENIES** the motion in its entirety.

**SIGNED this 9th day of August, 2023.**

ROY S. PAYNE  
UNITED STATES MAGISTRATE JUDGE