IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| VARTA MICROBATTERY GMBH, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. 2:21-CV-00400-JRG-RSP |
| § | (LEAD CASE) |
| AUDIO PARTNERSHIP LLC and AUDIO § | |
| PARTNERSHIP PLC d/b/a CAMBRIDGE § | |
| AUDIO, § | |
| § | |
| *Defendants*. § | |

**MEMORANDUM ORDER**

Before the Court is Plaintiff VARTA Microbattery GmbH's Motion to Exclude Opinions of Marc Juzkow (**Dkt. No. 98**).[1] Defendant EVE Energy Co., Ltd. filed a Response (Dkt. No. 118), and VARTA filed a Reply (Dkt. No. 134). Based on agreements reached by the parties, the only remaining issue for the Court to address is in Section III.C.2 regarding the term "spot welded connections and/or linear welded connections." *See* Notice, Dkt. No. 195 at 2. The motion is **GRANTED IN PART** for the reasons below.

**I.   BACKGROUND**

On October 25, 2021, VARTA filed suit against Defendants Audio Partnership LLC and Audio Partnership PLC d/b/a Cambridge Audio (together, "Audio Partnership") and EVE Energy Co., Ltd. alleging that infringement of United States Patent Nos. 9,153,835 (the "'835 Patent"); 9,496,581 (the "'581 Patent"); 9,799,913 (the "'913 Patent"); 11,024,869 (the "'869 Patent"); 11,024,904 (the "'904 Patent"); and 11,024,905 (the "'905 Patent"). 2:21-CV-00400, Dkt. No. 1 (Audio Partnership Complaint); 2:21-CV-00399, Dkt. No. 1 (EVE Complaint). Audio Partnership

---

[1] References to docket and page number correspond to those assigned through ECF.

1

is no longer in the case. *See* Order, Dkt. No. 45 (dismissing Audio Partnership). The '835 Patent has also been dropped from the case. *See* Joint Pretrial Order, Dkt. No. 187 at 4. Now, VARTA asserts that EVE infringes the '581 Patent, the '913 Patent, the '869 Patent, the '904 Patent, and the '905 Patent (collectively, the "Asserted Patents"). *Id.* Specifically, VARTA alleges that EVE infringes the following claims:

> '581 Patent: Claims 14-15, 17-23 and 25
> '913 Patent: Claims 9-16
> '869 Patent: Claims 1-20 and 22-29
> '904 Patent: Claims 1-8, 10-14, 16-17, 19 and 21-24
> '905 Patent: Claims 1-11, 13-15 and 17-18

(collectively, the "Asserted Claims"). *Id.*

Asserted claims of the '904 Patent include the limitation "spot welded connections and/or linear welded connections" (the "Disputed Limitation"). Claim 1, which is exemplary for purposes of this motion, has been reproduced below (Disputed Limitation in bold and italics):

> 1. A rechargeable button cell having a height-to-diameter ratio less than one, comprising:
> two metal housing components separated from one another by an electrically insulating injection-molded seal or film seal forming a housing having a plane bottom region and a plane top region parallel thereto;
> an electrode separator assembly comprising a positive electrode and a negative electrode inside the housing, the electrode separator assembly being provided in the form of a winding, end sides of which face in a direction of the plane bottom region and the plane top region such that layers of the electrode separator assembly are oriented essentially orthogonally to the plane bottom region and plane top region; and
> current collectors as respective parts of the positive and the negative electrodes, the current collectors provided in the form of metal foils or meshes, wherein the metal foils or meshes are coated on both sides with active electrode material,
> wherein a first of the current collectors provided in the form of the metal foil or mesh includes an uncoated section that is not coated with active electrode material, the uncoated section being directly connected, by one or more ***spot welded connections and/or linear welded connections***, to a first of the housing components to establish an electrical connection between the first of the current collectors and the first of the housing components, and
> wherein the button cell is configured as a secondary lithium ion battery.

2

'904 Patent, Dkt. No. 105-12 at 9:28–67.

EVE's non-infringement expert, Marc Juzkow, analyzes whether the Disputed Limitation "reads" on the accused products, he determines it does not, and he concludes that the products do not infringe the asserted claims of the '904 Patent for at least that reason. Juzkow Non-infringement Report, Dkt. No. 103-6 at ¶¶ 277–92, 301–06. VARTA argues that Mr. Juzkow improperly construes the Disputed Limitation in forming his non-infringement opinion. Motion, Dkt. No. 98 at 19. According to VARTA, paragraphs 277–92, 301–06 of his report should be excluded. *Id.* at 21.

The issue is whether Mr. Juzkow impermissibly construes the claims in his analysis, which would render his opinions inadmissible as failing to satisfy the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

**II.    LAW**

"Except as otherwise provided in this title, whoever without authority *makes, uses, offers to sell, or sells* any patented invention, within the United States or *imports* into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (emphasis added). Determining whether a product or method infringes a patent is a two-step process. *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)). The Court must first determine the proper construction of the asserted claims, which is a matter of law. *Id.* (citing *Shire Dev., LLC v. Watson Pharm.*, 787 F.3d 1359, 1364 (Fed. Cir. 2015)). At the second step, the finder of fact must determine whether the asserted claim, as properly construed, "reads" on the product or method. *Id.* (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009)). In other words, "a patentee must supply

sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim." *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1328 (Fed. Cir. 2019) (quoting *Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999)).

Evidence as to infringement is often presented through testimony of expert witnesses. An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 580 (1993). However, "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"). While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct ...." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

Expert testimony as to whether an accused product falls within the scope of the claims, as construed by the court, raises a factual issue for the jury to resolve. *See Network-1 Techs., Inc. v.*

*Alcatel-Lucent USA, Inc.*, No. 6:11-CV-492-RWS-KNM, 2017 WL 4864826, at *3 (E.D. Tex. Oct. 27, 2017); *accord EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016); *accord In re Maxim Integrated Products, Inc.*, 2015 WL 5311264, at *4 (W.D.Pa. Sept. 11, 2015). But expert testimony inconsistent with the court's claim construction should be excluded because it is unreliable and unhelpful to the finder of fact. *See Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed.Cir.2009); *see also EMC Corp.*, 154 F. Supp. 3d at 109 ("As expert testimony inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact," it should be excluded under the *Daubert* standard."); *accord Network-1 Techs.*, 2017 WL 4864826, at *3 (E.D. Tex. Oct. 27, 2017). Expert testimony based on impermissible claim construction is also properly excluded because it may confuse the jury. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n. 2 (Fed.Cir.2006).

### III. ANALYSIS

Does Mr. Juzkow impermissibly construe the Disputed Limitation within asserted claims in developing his opinions that the accused products do not infringe? Yes.

The Disputed Limitation was not raised in the claim construction briefing and was not construed by the Court. Accordingly, the term "spot welded connections and/or linear welded connections" (the Disputed Limitation) has its plain and ordinary meaning as understood by one of ordinary skill in the art. To determine how one of ordinary skill in the art would understand that term with reference to the accused products, Mr. Juzkow is permitted to review the '904 Patent to determine the technical context of the claimed invention and then use his technical understanding to form his opinions on whether the accused products infringe. Mr. Juzkow is *not* allowed to use intrinsic evidence, such as the surrounding claim language, specification, or prosecution history—entirely divorced from any accused products—to narrow the plain and ordinary meaning of the

claims, including the Disputed Limitation. That is impermissible claim construction because it involves determining how the use of the term in the claim differs from its plain meaning. Two relevant paragraphs from Mr. Juzkow's report have been reproduced below.

> 280. The specifications of the '904 patent states that the conductor is welded to the inner side of the housing when the housing is closed. '904 patent at [7:6-8]. It further states that the welding must correspondingly be carried out from the outside through the housing walls of one or both housing halves. '904 patent at [7:8-10]. It further states that the welding is preferably carried out by a laser. '904 patent at [7:18-19], [8:24-35].
>
> 281. *Therefore, a POSITA would understand the term* "by one or more spot welded connections and/or linear welded connections" *in claim 1 to mean* that there are weld beads and/or weld spots that pass through the housing), in particular starting from its outer side, to connect the uncoated section to the housing, as indicated by the illustration of weld bead 115 in FIG. 1B.

Juzkow Noninfringement Report, Dkt. No. 103-6 at ¶¶ 280–81 (emphasis added).

VARTA argues that Mr. Juzkow improperly construes the Disputed Limitation to mean "weld beads or weld spots that pass through the housing, starting from its outer side," which are formed by "laser irradiation" or a "laser." Motion, Dkt. No. 98 at 19 (citing Juzkow Noninfringement Report, Dkt. No. 103-6 at ¶¶ 281, 285, 287). Further, VARTA argues that Mr. Juzkow departs from the plain and ordinary meaning of the claim language by improperly limiting it to a preferred process described in the specification. Reply, Dkt. No. 134 at 7–8.

EVE responds that the paragraphs identified above reflect Mr. Juzkow's understanding of how the '904 Patent specification describes the process by which "the uncoated section" of the claimed first current collector is "directly connected, by one or more spot welded connections and/or linear welded connections, to a first of the housing components," as recited in the claims. Response, Dkt. No. 118 at 6. EVE contends that the terms "spot welding" and "linear welding" are known in the art to describe specific, well-known welding techniques. *Id.* at 7. According to EVE, based on that understanding, Mr. Juzkow opines that the resistance or ultrasonic welding

6

techniques used in forming the accused products do not create "one or more spot welded connections and/or linear welded connections" as required by the asserted claims of the '904 Patent. *Id.*

Here, certain of Mr. Juzkow's opinions improperly invade the Court's province of construing the claims. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 372, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). For example, in paragraphs 280 and 281 of his report, he analyzes the specification and limits the plain meaning of the Disputed Limitation to what he sees as the teaching of the specification. In other words, Mr. Juzkow improperly construes the Disputed Limitation. That goes too far. Consequently, the Court strikes paragraphs 280 and 281 of his report. Similarly, Mr. Juzkow *cannot* rely on his improper construction contained in paragraphs 280 and 281 to determine whether the accused products infringe.

Nevertheless, he is permitted to rely on his technical understanding and offer opinions—to the extent they are within the scope of his report—as to why, for example, the weld spots in the accused products are or are not "spot welded connections and/or linear welded connections" as required by the claims. Certain of Mr. Juzkow's opinions expressed in his report as to the Disputed Limitation are appropriately based on his knowledge of the way the claim terms are understood in the art, as opposed to his reading of the specification. Therefore, VARTA's request to wholesale strike all of Mr. Juzkow's opinions as to the Disputed Limitation is overbroad, and the Court declines to do so. Those opinions can be properly explored through cross-examination. *Daubert*, 509 U.S. at 596

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** the motion to the extent that Mr. Juzkow is precluded from offering testimony that relies on his impermissible construction contained in ¶¶ 280, 281. The motion is otherwise **DENIED**.

**SIGNED this 10th day of August, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE