IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| VARTA MICROBATTERY GMBH, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00400-JRG-RSP |
| | § | (LEAD CASE) |
| AUDIO PARTNERSHIP LLC and AUDIO PARTNERSHIP PLC d/b/a CAMBRIDGE AUDIO, | § § § | |
| | § | |
| *Defendants*. | § § | |

**MEMORANDUM ORDER**

Before the Court is Defendant EVE Energy Co., Ltd.'s *Daubert* Motion to Exclude Certain Opinions of William B. Metzdorff (**Dkt. No. 95**).[1] Plaintiff VARTA Microbattery GmbH filed a Response (Dkt. No. 116), EVE filed a Reply (Dkt. No. 143), and VARTA filed a Sur-reply (Dkt. No. 152). The Court **DENIES** the motion for the reasons below.

**I.   BACKGROUND**

On October 25, 2021, VARTA filed suit against Defendants Audio Partnership LLC and Audio Partnership PLC d/b/a Cambridge Audio (together, "Audio Partnership") and EVE Energy Co., Ltd. alleging that infringement of United States Patent Nos. 9,153,835 (the "'835 Patent"), 9,496,581 (the "'581 Patent"), 9,799,913 (the "'913 Patent"), 11,024,869 (the "'869 Patent"), 11,024,904 (the "'904 Patent"), and 11,024,905 (the "'905 Patent"). 2:21-CV-00400 (Audio Partnership Complaint); 2:21-CV-00399 (EVE Complaint). Audio Partnership is no longer in the case. *See* Order, Dkt. No. 45. The '835 Patent has also been dropped from the case. *See* Joint Pretrial Order, Dkt. No. 187 at 4. Now, VARTA alleges that EVE infringes the '581 Patent, the

---

[1] Unless otherwise stated, references to docket and page number correspond to those assigned through ECF.

1

'913 Patent, the '869 Patent, the '904 Patent, and the '905 Patent (collectively, the "Asserted Patents"). *Id.*

VARTA's damages expert, William B. Metzdorff, calculates the damages VARTA is owed for EVE's alleged infringement in the form of (1) lost profits, (2) a reasonable royalty, and (3) a combination of lost profits and reasonable royalty. Metzdorff Damages Report at ¶¶ 21–23. In developing his opinions, Mr. Metzdorff reviews the documents EVE produced reflecting that its revenues from the accused button cell batteries amounted to about $0.49 per unit. *Id.* (Appendix C – Georgia Pacific Factors) at ¶¶ 64–74. According to Mr. Metzdorff, EVE's sales and revenue information appears "suspect" because he believes EVE misstates the price, *id.* at ¶ 67, and overstates the costs, *id.* at ¶ 68–73. Mr. Metzdorff contends that if EVE's information was correct, its profitability results would be "nonsensical." *Id.* at ¶ 74. Mr. Metzdorff reviews information from other sources, such as (1) a report published by Seeking Alpha, which cites EVE's Yiwei subsidiary selling EVE's 1254 V2 batteries for 1.93 EUR, (2) Alibaba.com offering EVE's ICR1254 batteries at prices between $1.39 and $2.99 depending on volume, and (3) Alieexpress.us offering single ICR1254 and ICR1454 batteries for $1.89 and $2.37, respectively. *Id.* at ¶¶ 75–81.

For the lost profits theory, Mr. Metzdorff identifies that EVE's accused button cell batteries directly compete with VARTA's coin cell batteries, and he analyzes the lost profits under the *Panduit* factors. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); Metzdorff Damages Report (Appendix B – Panduit Factors) at ¶¶ 1–20 (Demand for the patented product), ¶¶ 21–38 (Absence of acceptable non-infringing substitutes), ¶¶ 39–47 (Manufacturing and marketing capability to exploit demand)  ¶¶ 48–59 (Amount of profit that would have been earned). Mr. Metzdorff analyzes (1) pouch cell batteries and (2) batteries using

2

stacked electrode configurations, and he concludes that neither is an acceptable substitute. Metzdorff Damages Report at (Appendix B – Panduit Factors) at ¶¶ 21–38. He also explains why, in his view, using VARTA's sales from 2021 is more reasonable in calculating lost profit damages. *Id.* at ¶¶ 49–52; *see also* Metzdorff 5/23/23 Dep. Tr., Dkt. No. 116-1 at 42:8–43:23.

For his reasonable royalty analysis, Mr. Metzdorff analyzes the *Georgia Pacific* factors, and calculates a reasonable royalty rate of $0.62 per battery. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971); Metzdorff Damages Report (Appendix C – Georgia Pacific Factors) at ¶¶ 1–10 (Factor 1), ¶¶ 11–13 (Factor 2), ¶¶ 14–19 (Factor 3), ¶¶ 20–35 (Factor 4), ¶¶ 36–45 (Factor 5), ¶¶ 46–50 (Factor 6), ¶¶ 51–58 (Factor 7), ¶¶ 59–84 (Factor 8), ¶¶ 85–90 (Factor 9), ¶¶ 91–95 (Factor 10), ¶¶ 96–100 (Factor 11), ¶¶ 101–105 (Factor 12), ¶¶ 106–112 (Factor 13), ¶¶ 113 (Factor 14), ¶¶ 114–120 (Factor 15). Mr. Metzdorff calculates EVE's revenues using the $2.15 price per battery from the Seeking Alpha report. *Id*. at ¶ 99. He also states that his calculated royalty rate of $0.62 per battery would force EVE and/or its customers to pay what would have been the agreed-to price with VARTA, which includes EVE's price plus the $0.62 of ill-gotten savings. *Id.* at ¶ 120.

Finally, he calculates damages including both lost profits and reasonable royalty following the *Mor-Flo* methodology by using a market share analysis. *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1022 (1990); Metzdorff Damages Report at ¶¶ 75–85, 105–107.

EVE moves to strike certain of Mr. Metzdorff's opinions on five separate grounds: (1) he bases his opinions on an incorrect price for the accused products; (2) his lost profits analysis fails to account for price elasticity; (3) his "ill-gotten savings" to customers analysis is not a proper

measure of a reasonable royalty; (4) his lost profits analysis is inappropriate because VARTA does not sell similar products to EVE; and (5) he ignores VARTA's actual increased costs when calculating its expected 2022 profits. Motion, Dkt. No. 95 at 4–11. In essence, EVE raises separate reasons in the context of his lost profits and reasonable royalty analysis, as to why Mr. Metzdorff's opinions allegedly fail to meet the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

The issue is whether Mr. Metzdorff's calculations and opinions regarding lost profits and a reasonable royalty are proper.

## II. LAW

### A. *Daubert* Standard

An expert witness may provide opinion testimony if (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (b) "the testimony is based on sufficient facts or data;" (c) "the testimony is the product of reliable principles and methods;" and (d) "the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 580 (1993). However, "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"). While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct ...." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d

269, 276 (5th Cir. 1998)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

### B. Reasonable Royalty

Upon a finding of infringement, a patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer …." 35 U.S.C. § 284. "A 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868–69 (Fed. Cir. 2010) (citation omitted). A comprehensive (but unprioritized and often overlapping) list of relevant factors for a reasonable royalty calculation appears in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

"A patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018), *cert. denied,* 139 S. Ct. 1265 (2019). The patentee bears the burden of proving damages. *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1324 (Fed. Cir. 2009) (citations omitted). Thus, the patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features …." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). Accordingly, royalties must be apportioned between the infringing and non-infringing features of the product. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011); *Lucent*, 580 F.3d at 1336–37. If the patentee fails to tie the theory to the facts of

the case, the testimony is excluded. *Uniloc USA*, 632 F.3d at 1315. "But where the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

### C. Lost Profits

To recover lost profits, the patentee must show a "reasonable probability that, 'but for' infringement, it would have made the sales that were made by the infringer." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (quoting *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001)). "One 'useful, but non-exclusive' method to establish the patentee's entitlement to lost profits is the *Panduit* test first articulated by the Sixth Circuit." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284 (Fed. Cir. 2017) (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978)). According to *Panduit*, the patentee must prove: "(1) demand for the patented product; (2) an absence of acceptable, non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit that would have been made." *Presidio Components*, 875 F.3d at 1380 (citing *Panduit*, 575 F.2d at 1156). "[T]here are no bright-line rules for deciding 'acceptability' of a non-infringing substitute, if the patentee shows consumers specifically want devices with certain advantages, non-infringing alternatives cannot be 'acceptable' without those advantages." *Salazar v. Htc Corp.*, No. 2:16-cv-01096-JRG-RSP, 2018 U.S. Dist. LEXIS 234544, *7 (E.D. Tex. Mar. 28, 2018).

If the patentee "establishes a reasonable probability of 'but for' causation, 'the burden shifts to the accused infringer to show that [the patent owner's 'but for' causation claim] is unreasonable for some or all of the lost sales.'" *Grain Processing Corp. v. Am. Maize-Prods Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (quoting *Rite-Hite*, 56 F.3d at 1545).

### III. ANALYSIS

#### A. The Price Mr. Metzdorff Uses Does Not Render His Opinions Unreliable

First, EVE argues that Mr. Metzdorff's opinions are implausible because his calculated royalty rate equates to 120% of EVE's revenue from the accused products. Motion, Dkt. No. 95 at 4. EVE contends that, in calculating the reasonable royalty, Mr. Metzdorff ignores EVE's produced sales data that reflected a sales price of about $0.49 per battery. *Id.* at 4. Instead, according to EVE, he relies on an anonymous post from Seeking Alpha that fails to cite a reliable source for its estimate that EVE's sales price is about $2.15 per battery. *Id.* at 4–5. Therefore, according to EVE, Mr. Metzdorff's opinions are unreliable as he relies on an unreliable estimate rather than EVE's actual sales data and purchase orders. *Id.* (citing *Summit 6*, 802 F.3d at 1295).

Here, Mr. Metzdorff evaluates EVE's sales data and compares it to publicly available sales data to arrive at the $2.15 per battery price that he uses in calculating a reasonable royalty. He reviews EVE's financial documentation and notes that EVE's reported costs and revenues would show that EVE loses money at the gross margin level. Metzdorff Damages Report (Appendix C – Georgia Pacific Factors) at ¶¶ 64–66. He states that, based on his experience, EVE's button cell battery financial information is "suspect" because the numbers suggest EVE would have never commenced production. *Id.*

Questioning the financial information, he turned to publicly available sources for additional data. While EVE criticizes Mr. Metzdorff's reliance on the Seeking Alpha article, the

7

article cites EVE's Yiwei subsidiary as selling EVE's 1254 V2 batteries for about $2.11 each. Metzdorff Damages Report (Appendix C – Georgia Pacific Factors) at ¶¶ 75–78. Mr. Metzdorff also notes that Alibaba.com offers EVE's ICR1254 batteries at prices between $1.39 and $2.99 per battery depending on volume, and Aliexpress.us offers ICR1254 for $1.89 per battery and ICR1454 for $2.37 per battery. Mr.

Mr. Metzdorff's opinions are not automatically unreliable because he chooses to rely on different information than EVE. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony.") (citing the Advisory Committee Note to Rule 702). The Federal Circuit has cautioned against capping a reasonable royalty based on an accused infringer's margins. *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013) ("The infringer's selling price can be raised if necessary to accommodate a higher royalty rate, and indeed, requiring the infringer to do so may be the only way to adequately compensate the patentee for the use of its technology.")

In sum, the $2.15 price Mr. Metzdorff relies on is sufficiently tied to the facts of the case to avoid exclusion. *Summit 6*, 802 F.3d at 1296.

### B. Mr. Metzdorff's Lost Profit Analysis Adequately Considers the Relevant Factors

Second, EVE argues that Mr. Metzdorff uses $2.15 as EVE's sales price—300% higher than what EVE reported—and then he multiples that price by the number of products EVE sold without considering that the increased price may reduce sales. Motion, Dkt. No. 95 at 7 (citing *Crystal Semiconductor*, 246 F.3d at 1357 ("in a credible economic analysis, the patentee cannot show entitlement to a higher price divorced from the effect of that higher price on demand for

the product.")). According to EVE, Mr. Metzdorff's lost profits opinions should be excluded for using an unreliable methodology.

The Court disagrees. EVE's criticisms go to the weight to be accorded to Mr. Metzdorff's opinions and not its admissibility. The alleged issue with Mr. Metzdorff's methodology requires the Court to accept EVE's view of the disputed issues of fact (sales price) and ignore VARTA's view. The Court declines to improperly evaluate disputed facts. *CoreLogic Info. Sols. v. Fiserv, Inc.*, 2:10-CV-132-RSP, 2012 WL 12897920, at *3 (E.D. Tex. Sep. 22, 2012).

Additionally, *Crystal Semiconductor* is distinguishable because Crystal Semiconductor Corp. sought damages under a price erosion theory, and it was competing in a competitive PC sound card CODEC market with acceptable CODEC substitutes from other manufacturers. *Crystal Semiconductor*, 246 F.3d at 1359. Here, in contrast, Mr. Metzdorff identifies evidence to support his opinions that (1) VARTA's CoinPower cells directly compete with EVE's infringing button cells and (2) there are no acceptable non-infringing substitute products.

Consequently, the Court is satisfied that Mr. Metzdorff properly analyzes lost profits under *Panduit*. *See CoreLogic*, 2012 WL 12897920, at *2 (distinguishing the facts from *BIC Leisure Products* because evidence suggested there were no acceptable non-infringing substitute products and plaintiff's products were interchangeable with the accused products).

EVE's argument about price elasticity assumes that the current price is $0.49. However, VARTA's expert is testifying that EVE's actual current price is much higher. Under that scenario, there would not be the price increase that elasticity addresses.

### C. The Reference to "Ill-gotten Savings" is An Inadequate Basis to Exclude His Testimony

Third, EVE argues that Mr. Metzdorff improperly determines a reasonable royalty that erases "ill-gotten savings" by customers through lower prices. Motion, Dkt. No. 94 at 8.

According to EVE, those opinions mean that EVE would be willing to pay even larger royalties if it lowered its sales price. *Id.* at 9. EVE contends this is implausible theory is illogical and renders his reasonable royalty opinions unreliable. *Id*.

The Court is not persuaded. The identified statements are within the "summary statement regarding $0.62 reasonable royalty per battery" at the end of Mr. Metzdorff's full reasonable royalty analysis. Metzdorff Damages Report (Appendix C – Georgia Pacific Factors) at ¶¶ 117–120. During his deposition, Mr. Metzdorff did not agree with EVE's assertion that EVE would pay increased royalties as a result of decreasing its prices. Metzdorff 5/23/23 Dep. Tr., Dkt. No. 116-1 at 198:18–200:24. EVE's criticisms go to the weight of Mr. Metzdorf's opinions, rather than their admissibility, and can be properly challenged through cross-examination. *Daubert*, 509 U.S. at 596.

### D. Mr. Metzdorff Adequately Compares the Similarity of EVE's Products to VARTA's Products

Fourth, EVE criticizes Mr. Metzdorff's lost profits analysis because it contends VARTA does not sell batteries that are the same sizes as EVE's accused models. Motion, Dkt. No. 95 at 9. According to EVE, VARTA's corporate representative conceded as much during deposition. Miehlich 5/25/23 Dep. Tr., Dkt. No. 95-4 at 76:6–77:6. Therefore, EVE argues, his opinions should be excluded. Motion, Dkt. No. 95 at 10.

Again, the Court disagrees. Mr. Miehlich testified that VARTA's 9440 model is just slightly smaller than EVE's 1040 and 1045 models. Miehlich 5/25/23 Dep. Tr., Dkt. No. 95-4 at 77:25–78:13. VARTA also offers testimony that it has a 1040 size. Hald, 5/15/23 Dep. Tr., Dkt. No. 116-4 at 123:4–124:1. Further, Mr. Metzdorff stated that he analyzed lost profits with the understanding that VARTA could make and sell any battery that EVE made. Metzdorff 5/23/23 Dep. Tr., Dkt. No. 116-1 at 89:3–23.

Mr. Metzdorff's opinions are sufficiently reliable and relevant to be helpful to the finder of fact.

### E.  Mr. Metzdorff Adequately Explains Why the 2022 Profits was An Outlier

Finally, EVE argues that Mr. Metzdorff's calculations omit VARTA's increased costs during 2022. Motion, Dkt. No. 94 at 10. According to EVE, his lost profits calculations should be excluded because they ignore reality and are improperly inflated. *Id.* at 11.

The Court is not persuaded that this issue affects the reliability, rather than the correctness, of his opinions. In his report, Mr. Metzdorff explains that his lost profits calculation is based on VARTA's financial results from 2021. Metzdorff Damages Report (Appendix B – Panduit Factors) at ¶¶ 49–52. He considered a combined lost profit per battery, including both VARTA's 2021 and 2022 financial results, but he concluded that the 2022 results, particularly the costs, were not consistent with prior periods. *Id.* at ¶ 50. Accordingly, he explains that he elected not to include VARTA's 2022 financial results because they were "negatively impacted by variable overhead that was spread over lower-than-expected volumes," which was resolved in 2023. *Id.* at ¶¶ 51–52.

Mr. Metzdorff may properly consider the variability of VARTA's costs per battery in his analysis. *See In re* Mahurkar Patent Litigation, 831 F. Supp. 1354, 1386, 28 USPQ2d 1801, 1826 (N.D. Ill. 1993) ("Although costs of sales, general overhead, and the like, are not variable for small changes in output over the short run, they are most assuredly variable for larger changes over the long run."), *aff'd*, 71 F.3d 1573, 37 USPQ2d 1138 (Fed. Cir. 1995). In doing so, he excludes the 2022 results and explains his decision. While he evaluates and decides which facts to include and which to ignore, his calculations are sufficiently tied to the facts of the case

11

to justify presenting them to the jury. *Summit 6*, 802 F.3d at 1296. The correctness of his opinions can be properly explored through cross-examination. *Daubert*, 509 U.S. at 596.

### IV.   CONCLUSION

For the reasons above, the Court **DENIES** the motion in its entirety.

**SIGNED this 22nd day of August, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE